NOT FOR PUBLICATION                                                                                          CLOSED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
PINE BELT AUTOMOTIVE, INC.          :
:
:
:   CIVIL ACTION NO. 06-5995 (JAP)
:
Plaintiff,                    :
v.                         :   **OPINION**
:
ROYAL INDEMNITY COMPANY and         :
GRANITE STATE INSURANCE     :
COMPANY, MEMBER             :
AMERICAN INTERNATIONAL      :
GROUP, INC.                         :
:
Defendants.                   :
_____:

PISANO, District Judge.

This action arises from a complaint brought by Plaintiff, Pine Belt Automotive, Inc. ("Pine Belt"), alleging that Defendants, Royal Indemnity Company ("Royal") and Granite State Insurance Company ("Granite State"), breached their insurance agreements when they denied Pine Belt coverage under their respective insurance policies. Currently before the Court is a motion for summary judgment brought by Royal and a cross-motion for summary judgment by Pine Belt. For the reasons set forth herein, the Court grants Royal's motion for summary judgment and denies Pine Belt's cross-motion for summary judgment.

**I.    BACKGROUND**

Pine Belt is an automobile dealer with multiple dealerships located throughout

-1-

Monmouth County, New Jersey. (Compl. ¶ 1.) From June 1, 2003 to June 1, 2004 Pine Belt was insured by Royal. (*Id.* ¶ 7.) The insurance included Commercial Crime Coverage and Truth in Lending Errors and Omissions Liability Coverage ("Truth in Lending"). (*Id.*)

Specifically, the Commercial Crime Coverage insured against "loss of or damage to 'money,' 'securities' and 'other property' resulting directly from 'theft' committed by an 'employee,' whether identified or not, acting alone or in collusion with other persons." (Weiss Affidavit ("Aff.") Exh. 4, A. Insuring Agreement 1. Employee Theft.) Coverage for employee theft was limited to $500,000 per occurrence under the Royal Policy Declarations. (Weiss Aff. Exh. 15.)

The Royal Policy contained several conditions to the Commercial Crime Coverage. The "Loss Sustained" Condition E.1.*l* and "Extended Period to Discover Loss" Condition E.1.f are of particular importance to the instant case. The "Loss Sustained" Condition provided:

> Subject to the Loss Sustained During Prior Insurance Condition E.1.m., we will pay for loss that you sustain through acts committed or events occurring during the policy period shown in the Declarations and discovered by you:
>
> (1) During the policy period; or
>
> (2) During the period of time provided in the Extended Period to Discover Loss Condition E.1.f.

The "Extended Period to Discover Loss" stated:

> (1) We will pay for loss that you sustained prior to the effective date of termination or cancellation of this insurance, which is discovered by you no later than 1 year from the date of that termination or cancellation.
>
> (2) However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by you replacing in whole or in part the insurance afforded hereunder, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

(Weiss Aff. Exh. 6.)

Pursuant to these conditions, an insured would be covered for losses sustained during the policy period and for losses discovered within the policy period or one year later. However, the one-year discovery period would end once the insured purchased successive coverage.

Additionally, Condition E.l.n entitled, "Other Insurance," provided coverage for portions of losses that were not covered under another insurance policy. Specifically, the condition stated:

> This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. If the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any Deductible Amount, not recoverable or recovered under the other insurance or indemnity. However, this insurance will not apply to the amount of loss that is more than the applicable Limit of insurance shown in the Declarations.

(Weiss Aff. Exh. 6.)

The Royal Policy also contained Truth in Lending Errors Coverage, which was separate from the Commercial Crime Coverage. The Truth in Lending provision provided:

> a. We will pay all sums you legally must pay as damages because of negligent acts, errors or omissions resulting in failure to comply with the Consumer Credit Protection Act, Title 15 U.S.C.A. Section 1640 as amended, or with any similar state or local statute.
>
> b. This insurance does not apply to damages arising out of any dishonest, fraudulent, criminal or intentional act or acts committed by or at the direction of you, any of your . . ., 'employees,' . . ., agents or other parties, whether acting alone or in collusion with others.

(Weiss Aff. Exh. 6.)

Prior to the expiration of the policy on June 1, 2004, Royal informed Pine Belt that the policy would not be renewed. (Compl. ¶ 11.) Pine Belt, therefore, purchased insurance from Granite State who provided coverage from June 1, 2004 to June 1, 2005. (*Id.* ¶¶ 7, 12.) This

insurance became effective the day the Royal Policy expired. (*Id.*) The Granite State Policy contained virtually identical coverage to the Royal Policy, including Condition E.1.m, entitled "Loss Sustained During Prior Insurance," which provided:

> If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:
>
> (a) This insurance became effective at the time of cancellation or termination of the prior insurance; and
>
> (b) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

(*Id.* ¶¶ 12, 16.)

On May 27, 2005, Pine Belt notified Royal and Granite State that it had discovered an incident of employee theft resulting in losses of approximately $900,000.[1] (*Id.* ¶ 33.) Some of these losses were incurred while the Royal Policy was in effect. (*Id.* ¶ 22.) Pine Belt subsequently filed a proof of loss with both insurance companies on March 28, 2006. (*Id.* ¶ 39.) Royal declined coverage, pursuant to Condition E.1.f, claiming that the loss was not discovered by Pine Belt within the extended period to discover loss after termination of the policy. (*Id.* ¶ 41.) Specifically, Royal determined that "the extended period to discover loss under the Royal Policy terminated immediately upon the effective date of [Granite State's] insurance policy which commenced immediately following the termination of the Royal coverage." (Carlin Aff. Exh. B., Pl.'s Stmt. Undisputed Facts ¶ 43.) Granite State acknowledged coverage for the losses sustained during its own policy period as well as the losses incurred under Royal's policy

---

[1] The facts relating to the employee theft are set forth in detail in *Pine Belt Auto. v. Royal Indem. Co.*, No. 06-5995, 2008 U.S. Dist. LEXIS 84393 (D.N.J. Oct. 21, 2008).

pursuant to Condition E.1.m.  (Compl. ¶ 60.)  However, Granite State agreed to cover only $100,000 worth of the losses under its policy limit because it determined that the losses sustained by Pine Belt were the result of a single occurrence.  (*Id*. ¶¶ 60-61.)

Pine Belt filed a complaint against Royal and Granite State on December 12, 2006.  Pine Belt alleged that Royal breached its insurance agreement because it declined to cover the losses sustained during the period in which the Policy was in effect.  (Compl. ¶¶ 40-54.)  Pine Belt also claimed that Royal failed to acknowledge coverage under the Truth in Lending provision.  (*Id.* ¶¶ 48-49.)  Similarly, Pine Belt argued that Granite State breached its insurance agreement when it declined to cover the total amount of the sustained losses.  (Compl. ¶¶ 55-70.)

On August 4, 2008, Granite State moved for summary judgment, which this Court granted on October 22, 2008.  *See Pine Belt Auto. v. Royal Indem. Co.*, No. 06-5995, 2008 U.S. Dist. LEXIS 84393 (D.N.J. Oct. 21, 2008).[2]  On February 17, 2009, the First Atlantic Credit Union ("FAFCU"), filed a complaint against Pine Belt for the losses it sustained as a result of the Pine Belt employee's acts and for "negligence in failing to adequately train, supervise and monitor employees."  (FAFCU Compl. First Count ¶¶ 18, 19; Second Count ¶ 4.)

Royal moved for summary judgment on February 6, 2009 arguing that Pine Belt's claim is barred under the unambiguous terms of policy conditions E.1.f and E.1.m.  Pine Belt opposed the motion and cross-moved for summary judgment against Royal seeking a determination that the losses sustained by the Pine Belt employee's conduct are covered under the Royal Commercial Crime Coverage and the Truth in Lending provisions.

---

[2]Shortly thereafter, Pine Belt filed a Motion for Reconsideration, which was denied on February 19, 2009.  (Carlin Aff. Exh. P, Opinion on Motion for Reconsideration p. 7.)

## II. DISCUSSION

### A. Standard of Review

A court shall grant summary judgment under Federal Rule of Civil Procedure 56(c) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, *supra*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

B.   Analysis

*i.   The Royal Policy is Unambiguous.*

The Court begins its analysis by stating the basic proposition that "when interpreting an insurance policy, courts should give the policy's words their plain, ordinary meaning" as long as the policy, as written, is not ambiguous. *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006) (internal citations omitted). In New Jersey, an ambiguity in an insurance contract exists "where the 'phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" *Resolution Trust Corp. v. Fid. & Deposit Co. of Maryland*, 205 F.3d 615, 643 (3d Cir. 2000) (quoting *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 245 (1979)). Moreover, courts may not "torture language of insurance policies to create ambiguity where none exists in order to impose liability." *Resolution Trust Corp.*, 205 F.3d at 643. Finally, courts should refrain from reviewing extrinsic evidence unless an ambiguity exists. *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008).

Royal argues that the policy language is unambiguous and its terms should therefore be enforced as written. On the other hand, Pine Belt contends that it is ambiguous, violates public policy and is unreasonable. Specifically, Pine Belt claims that it is unclear whether the Royal Commercial Crime Coverage was written on a Loss Sustained Form or a Discovery Form and therefore, the Court should find the insurance contract to be ambiguous and construe it against the insurer. (Pl.'s Br. p. 7); *J.G. Link & Co. v. Cont'l Cas. Co.*, 470 F.2d 1133, 1136 (9th Cir. 1972)). In response, Royal points to numerous instances where Pine Belt has acknowledged that the policy was written on a Loss Sustained Form. For example, on page six of its brief Pine Belt states "The Commercial Crime Coverage issued by Royal was on a Loss Sustained Basis." (*See*

*also* Pl.'s Stmt. Material Facts ¶ 5; Compl. ¶ ¶ 7, 8, 41, 47, 53.)  Additionally, Royal points to the actual policy reprinted in the Weiss affidavit which clearly states LOSS SUSTAINED FORM in bold at the top of the page.  (Weiss Aff. Exh. 4.)  As it is quite obvious to the Court that the policy was written on a Loss Sustained Form, the Court finds that no ambiguity exists.

In another attempt to create an ambiguity, Pine Belt further argues that it is unclear whether the policy is a discovery or an occurrence policy.  The Court finds no ambiguity here, nor will it strain to create an ambiguity, because this policy has been interpreted.  In *Southeast Bakery Feeds, Inc. v. Ranger Ins. Co.*, 974 S.W.2d 635, 639 (Mo. Ct. Appeals 1998), a case both parties rely on, the Missouri Court of Appeals concluded that "fidelity coverage, including commercial crime coverage, has historically been provided on a loss sustained basis subject to discovery within a certain period."

In yet another attempt to persuade the Court to construe the policy against the insurer, Pine Belt claims that the language of Condition E.1.f is contrary to New Jersey's public policy because section two of the condition provides for the immediate termination of the extended period to discover loss, which effectively nullifies the extended period to discover loss.  Specifically, Pine Belt contends that the Condition, as written, imposes "the requirement of the occurrence of events and the discovery of those events during the policy period without any prospective coverage after the termination of the policy period."  (Pl.'s Br. p. 8.)  Because the Court has not uncovered a New Jersey case that has addressed this argument the Court relies on persuasive cases from other jurisdictions.  In particular, the *Southeast Bakery* court concluded that provisions limiting "liability of the insurer . . . to losses discovered within a specified term . . . are not contrary to public policy." 974 S.W.2d at 639.  Additionally, in *Fireman's Fund Ins.*

-8-

*Co. v. Levine & Partners*, 848 So.2d 1186, 1187 (Ct App. Fla. 2003), the Florida Court of Appeals concluded that discovery provisions are not contrary to public policy, and also found that such provisions are common to fidelity policies. Accordingly, the Court finds that Condition E.1.f(2) does not violate public policy.

Pine Belt further claims that Condition E.1.f(2) is unenforceable because it limits the insured's ability "to bring a claim for a loss sustained during the policy period but not discovered until after the termination of the policy," which is unreasonable. (Pl.'s Br. p. 9.) In support of this argument, Pine Belt asserts that "[t]he New Jersey Supreme Court has held that insurance policy provisions limiting the time parties may bring a claim may be enforceable, but only if they are reasonable." (Pl.'s Br. p. 11-12); *Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co.*, 145 N.J. 345 (1990). Although Pine Belt accurately states the holding of *Eagle Fire*, the case is not relevant to its argument regarding the unreasonableness of Condition E.1.f(2). *Eagle Fire* addressed a provision in a surety bond that required the insured to bring suit against the insurer within a contractually stated time period, also known as a suit limitation condition. *Eagle Fire*, 145 N.J. at 359. Although the Royal Policy contains such a provision - Condition E.1.h - Pine Belt's Complaint does not challenge this condition. As such, the Court rejects Pine Belt's argument that Condition E.1.f(2) is unreasonable.[3]

Accordingly, because the Court finds that Royal policy to be unambiguous, reasonable,

---

[3]Similarly, the Court finds Pine Belt's assertion that its claim should not be denied because it provided late notice of loss to be irrelevant because this constitutes a separate challenge to Condition E.1.d. Royal did not deny coverage based on that condition.

and enforceable it will be enforced according to its express terms.[45]

        ii.      *Pine Belt's Recovery from Royal is Barred by the Express Terms of the Insurance Agreement.*

The dispute among the parties is whether the two sections of Condition E.1.f operate together or as separate, unrelated conditions. According to Royal's interpretation the loss incurred during the Royal Policy period, but discovered while insured by Granite State, is recoverable under the Royal Policy only if the Granite State policy had not been implemented. Royal argues that Condition E.1.f of its Policy, coupled with Condition E.1.m, ensures that an insured "may recover under either the predecessor or the successor policy for loss discovered within a year of the earlier policy's termination. The insured is not, however, entitled to recover under both." (Def.'s Br. p. 12. (emphasis in original)) On the other hand, Pine Belt proposes to ratify the first section and strike the second. Pine Belt argues that in order for it to receive coverage under the second section, it would have had to sustain the losses and discover them prior to the effective date of the Granite State policy. (Pl.'s Br. p. 12-13.)

---

[4]The Court also finds that Condition E.1.m of Granite State's policy is unambiguous, which is consistent with its Opinion dated October 21, 2008, where it determined that Granite State was liable for losses sustained while the Royal policy was in effect. *See also United States Fid. & Guar. Co. v. Maxicare Health Plans*, No. 96-2457, 1997 WL 466802, at *4 (E.D. La. Aug. 12, 1997) (finding a similar "Loss Sustained During Prior Insurance" condition enforceable and unambiguous"); *Armburst Int'l v. Travelers Cas. & Surety Co. of Am.*, No. 04-212, 2006 WL 1207659, at *10 (D.R.I. May 1, 2006) (enforcing a "Loss Sustained During Prior Insurance" condition).

[5]The Court also rejects Pine Belt's argument that Royal is liable for coverage under the "Other Insurance" provision in Condition E.1.n because this type of condition addresses concurrent, not successive policies. *Carter-Wallace v. Admiralty Ins. Co.*, 154 N.J. 312, 322 (N.J. 1998) ("'other insurance' clauses, which are provisions typically designed to preclude a double recovery when multiple, concurrent policies provide coverage for a loss . . . such clauses were not generally applicable in the continuous-trigger context where successive rather than concurrent policies were at issue.")

The Court finds that adopting Pine Belt's proposal would violate a cardinal rule of contract construction - specifically, that a court must give effect to all contract provisions. *Saudi Am. Bank v. Shaw Group, Inc.*, 558 F.3d 234, 246 (3d Cir. 2009) (citing *E. I. Du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985)). The Court further finds that the express terms, operating together, support Royal's interpretation. Accordingly, the Court adopts Royal's construction of Condition E.1.f.

      iii.      *Pine Belt's Cross Motion for Summary Judgment.*

Pine Belt cross moves for summary judgment contending that: (1) Pine Belt is entitled to coverage under the Royal Policy pursuant to the "Employee Dishonesty" provision; and (2) coverage is available under the "Truth in Lending" provision of the Royal Policy.

Based on the preceding analysis, the Court finds Pine Belt's "Employee Dishonesty" argument to be moot. As discussed at length in the analysis above, at the time Pine Belt discovered its losses, Royal's Policy had expired and Granite State's Policy was in effect. Both parties agree that this was the reason that Royal declined Pine Belt's Commercial Crime Coverage claim. (*See* Compl. ¶ 41; Ans. ¶ 41.) Moreover, the Court has already decided the employment dishonesty issue raised in Pine Belt's cross-motion in the Granite State Opinion dated October 21, 2008.[6] *See Pine Belt Auto.*, 2008 U.S. Dist. LEXIS 84393, at *15-17; (Carlin Aff. Exh. P, Opinion on Motion for Reconsideration.)

Finally, the Court finds that Pine Belt cannot recover under the Truth in Lending provision. As stated above, an unambiguous insurance policy is enforced according to its

---

[6]Similarly, the Court has already rejected Pine Belt's attempt to create coverage by waiver or estoppel. *Pine Belt Auto.*, 2008 U.S. Dist. LEXIS 84393, at *17, n6.

express terms. The Truth in Lending provision provides, in relevant part:

> a. We will pay all sums you legally must pay as damages because of negligent acts, errors or omissions resulting in failure to comply with the Consumer Credit Protection Act, Title 15 U.S.C.A. Section 1640 as amended, or with any similar state or local statute.

(Weiss Aff. Exh. 6.)

The only claim against Pine Belt that has been presented to the Court is the complaint by FAFCU for damages and "negligence in failing to adequately train, supervise and monitor employees." (FAFCU Compl. First Count ¶ ¶ 18, 19; Second Count ¶ 4.) Neither of the counts in FAFCU's complaint are characterized as claims under Title 15 U.S.C.A. § 1640 or other similar consumer protection laws. As such, the Court finds that Pine Belt's recovery is precluded by the express terms of the Truth in Lending provision.

### III. CONCLUSION

For the reasons expressed above, the Court grants Royal's motion for summary judgment and denies Pine Belt's cross-motion for summary judgment. An appropriate order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: April 16th, 2009